## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSE V. TERAN**,

        Plaintiff,

vs.                             No.    **CIV-01-1108 MCA/RLP**

**DAVID J. CARTER**,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court pursuant to Defendant's *Motion to Dismiss or Alternatively Motion for Partial Summary Judgment* (Doc. No.2) and Plaintiff's *Motion to Remand* (Doc. No. 6).  The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, finds that Defendant's motion is well taken as to all of Plaintiff's claims, except as to the state law claims that concern racial slurs.  Further, the Court finds that Plaintiff's *Motion to Remand* is well taken as to the claims relating to alleged racial slurs.  Accordingly, Defendant's *Motion to Dismiss or Alternatively Motion for Partial Summary Judgment* is **DENIED IN PART** with respect to Plaintiff's state law claims relating to alleged racial slurs and **GRANTED IN PART** with respect the dismissal without prejudice of Plaintiff's remaining claims.  In

addition, Plaintiff's **Motion to Remand** is **GRANTED** as to the claims relating to the alleged racial slurs.

## I.     BACKGROUND

Jose Teran (Plaintiff) was employed as a truck driver by Consolidated Freightways Corporation (Consolidated Freightways) since 1984.  (Compl. ¶ 1).  David Carter (Defendant) became his supervisor in 1997.  (Compl. ¶ 2).  Plaintiff was a member of Local Union 492 of the International Brotherhood of Teamsters (Teamsters Union).  A Collective Bargaining Agreement (CBA) existed between Consolidated Freightways and the Teamsters Union.[1]

On August 28, 2001, Plaintiff filed a complaint against Defendant in the Second Judicial District Court for the County of Bernalillo, State of New Mexico.  Plaintiff alleged intentional infliction of emotional distress and prima facie tort.  He contends that he was forced to work in a severely pervasive hostile work environment due to Defendant's outrageous and extreme acts. (Compl. ¶ 5).  Plaintiff contends that Defendant harassed him and discriminated against him based upon his nationality. (Compl. ¶ 6).  He also alleges that Defendant used inappropriate, intimidating, humiliating, and offensive slurs. (Id.) He claims that Defendant allotted unfair and difficult work loads to him and unjustifiably disciplined him.  (Compl. ¶ 7).  He also asserts that these wrongful acts of Defendant caused him loss

---

[1]
      Although Plaintiff's complaint does not address his membership in the Teamsters Union or the existence of a collective bargaining agreement, the facts are gleaned from the Notice of Removal and the exhibits attached thereto, which consist of pleadings and orders in a prior case.

of mental strength and stability.  He claims that the outrageous conduct intensified in spite of the numerous notices to Defendant that his conduct towards Plaintiff was inappropriate, intimidating, humiliating, and offensive.[2]  (Compl. ¶ 15).  Defendant removed the case to the United States District Court for the District of New Mexico on the ground that Plaintiff's claims are preempted under the Labor Management Relations Act (LMRA).  29 U.S.C §§ 141-187 (2000).

Previously, in February 2000, Plaintiff filed a lawsuit against Consolidated Freightways in the United States District Court for the District of New Mexico, therein alleging that his supervisors, David Carter (Defendant herein) and Alex Garcia, harassed him at the workplace and discriminated against him.  (Ex. B ¶ 17-18).  Plaintiff claimed violation of 42 U.S.C. § 1981, discrimination and retaliation in violation of Title VII, violation of the New Mexico Human Rights Act, breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, intentional infliction of emotional distress, and prima facie tort.  (Ex. B to Notice of Removal).  He further claimed that Consolidated Freightways was liable because Carter and Garcia's malicious conduct was within the course and scope of employment with Consolidated Freightways and that Consolidated Freightways was cognizant of, and condoned, their conduct towards him.  (Compl. ¶ 14).  Summary judgment was granted to Consolidated Freightways with respect to Plaintiff's claims of a hostile work environment, retaliation, disparate treatment at the workplace, and the state law claims of

---

[2]

Plaintiff claims that he was followed and spied on by private investigators and Consolidated Freightways' employees.  (Compl. ¶¶ 15 & 16).

defamation and intentional emotional distress.  See Teran v. Consolidated Freightways Corp.,

No. 00-229 (D.N.M,  Jan. 17, 2001) (Teran IA).  Further, Plaintiff's breach of contract

claims, prima facie tort claims, and breach of the implied covenant of good faith and fair

dealing claims were dismissed as they were preempted by LMRA.   See Teran v.

Consolidated Freightways Corp., No. 00-229 (D.N.M. Nov. 22, 2000) (Teran IB).  The Court

also dismissed Plaintiff's intentional infliction of emotional distress claim under the theory

of preemption to the extent it concerned the terms and conditions of Plaintiff's employment.

See id.

## II.    **ANALYSIS**

### A.    **Standard of Review**

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.'"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130

F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"The court's  function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."  Miller v. Glanz, 948 F.2d 1562,

1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are

accepted as true and viewed in the light most favorable to the nonmoving party.  GFF Corp.,

130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994). In particular, the Court may consider public court documents (such as Plaintiff's Complaint from an earlier proceeding) in deciding a motion to dismiss. See id.

To the extent that Defendant's motion refers to other material outside of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there

is a genuine issue of material fact left for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party opposing a properly-supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.  See id.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment.  See id.  Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party.  See Black Hills Aviation, Inc. v. United States, 4 F.3d 968, 972 (10th Cir. 1994).

### B.   Preemption and Labor Law

Generally, under the well-pleaded complaint rule, a plaintiff is the master of the claim and by exclusive reliance on the state law, a plaintiff can avoid federal jurisdiction.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal preemption is ordinarily raised as a defense to a claim and does not convert a state claim into a federal one.  "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  Id. at 393.  "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  Id. "The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA."  Id.

In enacting Section 301 of the LMRA, Congress intended a uniform body of substantive federal labor law to govern suits brought under the statute.  See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-11 (1985).  Section 301 of the LMRA provides in pertinent part:  "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).

The United States Supreme Court set forth the standard to be applied in determining when an individual who is a party to a CBA may maintain claims in a state court.  See Caterpillar Inc., 482 U.S. 386.  In Caterpillar Inc., the Court clearly distinguished between the necessity to refer to the CBA in proving a claim, and the necessity to interpret a CBA provision in establishing the merits of a defense.  Section 301 allocates to the jurisdiction of the United States District Court all cases where application of state law may substantially depend upon analysis of the terms of an agreement made between the parties in a labor contract.  See Allis-Chalmers Corp., 471 U.S. at 220.  If the claims sought to be removed are founded directly on rights created by the CBA, a case is removable to a federal court.  However, if a plaintiff asserts state-created legal rights that exist independently of a labor agreement or the CBA, then complete preemption does not apply to the claims and they should be remanded to the state court.  See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407 (1988) (holding that the state law claim for retaliatory discharge existed independently of the CBA and was not preempted by Section 301).  A defendant's reliance

on a CBA term purely as a defense to a state law claim does not result in Section 301 preemption.  See Caterpillar Inc., at 399.  Any claims that tangentially involve CBA provisions are not removable to the federal court.  See id. Thus, all state law claims are preempted when the evaluation of such claims depend upon the analysis of a CBA.

The elements of the standard applied by the Tenth Circuit in determining whether a tort claim is preempted include (1) whether resolution of the state law claim requires reference to, or an interpretation of, the CBA, or (2) whether the state law claims create a method independent of the CBA for measuring when an employer's work-related conduct is actionable.  See Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 530 (10th Cir. 1992). However, if the employer goes beyond the bounds of the work relationship, any torts that arise out of such behavior are not preempted because referring to the CBA is not required to determine whether the employer's behavior is wrongful or not.  Compare Albertson's, Inc. v. Carrigan, 982 F.2d 1478, 1482 (10th Cir. 1993) (holding that there is no need to refer to the CBA when the outrageous conduct involved the employer having the employee arrested by fabricating theft) with Mock, 971 F.2d at 530 (holding that the employer conducting an internal investigation suspecting theft by the employee will inevitably require an analysis of what the CBA permitted).

In the present case, Plaintiff alleges intentional infliction of emotional distress and prima facie tort claims against Defendant.  Generally, a plaintiff alleging intentional infliction of emotional distress must prove that he or she suffered severe emotional distress as a result of Defendant's extreme and outrageous conduct, and that such conduct was

-8-

intentional or reckless.  See Dominguez v. Stone, 97 N.M. 211, 213, 638 P.2d 423, 425 (1981).  A plaintiff alleging prima facie tort must establish (1) an intentional, lawful act; (2) committed with the intent to injure the plaintiff; (3) causing injury to the plaintiff; and (4) the absence of justification for the injurious acts.  Grover v. Stechel, 2002-NMCA-049, ¶ 19, 132 N.M. 140, 45 P.3d 80.  All surrounding circumstances must be examined to judge whether the defendant's conduct is justified or not.

More specifically, Plaintiff's Complaint alleges that Defendant harassed him at work by assigning him difficult loads and unjustifiably disciplining him for alleged poor performance.  Plaintiff's Complaint also alleges that Defendant made intimidating racial slurs at the work place and had him spied upon by private investigators and Consolidated Freightways employees.  (Compl. ¶ 6-20).  Thus, Plaintiff's Complaint alleges three kinds of allegedly tortious conduct:  (1) work-related conduct (such as punitive work assignments and unjustified disciplinary measures); (2) alleged spying or investigation; and (3) racial slurs.

Defendant asserts that all of Plaintiff's tort claims are preempted by Section 301 of the LMRA because these claims are intertwined with the CBA, and an analysis of those claims necessarily is dependent upon the interpretation of the CBA.  While Plaintiff does not deny membership in the labor union or the existence of the CBA, he contends that the legal claims asserted by him against Defendant do not turn upon the meaning and provisions of the CBA.  He also argues that Defendant is not the employer within the meaning of Section

301 of the LMRA and that he is bringing state tort claims against Defendant in his individual capacity.

With regard to each of Plaintiff's tort claims, the dispositive question is whether, in order to decide the state-law claims, the Court would need to consult the terms of the CBA. If this question is answered in the affirmative, then the claim is preempted by LMRA and is subject to dismissal inasmuch as Plaintiff's Complaint does not properly plead an LMRA claim.  See Garley v. Sandia Corp., 236 F.3d 1200, 1215 (10th Cir. 2001).

### 1.    **Work-Related Conduct**

Generally, the CBA governs matters of worker discipline, working conditions, and work assignments.  Thus, with regard to the tort claims that concern Defendant's involvement in Plaintiff's work assignments, working conditions, and work-related discipline, the Court would need to consult the terms of the CBA.   In particular, interpretation of the parties rights and obligations under the CBA is necessary in order to make a determination regarding elements of prima facie tort and intentional infliction of emotional distress, including whether Defendant's conduct was outrageous and without justification.

The CBA is the reference point against which Defendant's action must be scrutinized with regard to these claims.  See Garley, 236 F.3d at 1214; Steinbach v. Dillon Companies, 253 F.3d 538 (10th Cir. 2001) (concluding that the employee's state law claim of intentional infliction of emotional distress against the supervisor or manager's alleged conduct requiring the employee's return to work during her vacation and instituting an unwarranted and

unexcused absence charge was a subject covered by the CBA).  Accordingly, the Court

concludes that Plaintiff's claims of intentional infliction of emotional distress and prima facie

tort based upon work-related conduct are preempted and subject to dismissal.

### 2.   Spying/Employee Investigation

Plaintiff also alleges that he was spied-upon by private investigators and

employees of Consolidated Freightways.  In particular, the complaint alleges that "[f]or

instance, Defendant has had [Plaintiff] followed and spied upon by private investigators and

Consolidated Freightway[s'] employees."  For purposes of analyzing whether claims based

upon this type of allegation are preempted and subject to dismissal, the Court "accept[s] as

true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts

in the light most favorable to the nonmoving party."  Maher v. Durango Metals, Inc., 144

F.3d 1302, 1304 (10th Cir. 1998).  However, it is not the Court's function to "supply

additional factual allegations to round out a plaintiff's complaint or construct a legal theory

on a plaintiff's behalf."  Whitney v. State of N.M., 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Applying this standard, it appears that Plaintiff's allegations regarding spying are

made in the context of his claim that Defendant exhibited intimidating, humiliating,

offensive, and acutely damaging conduct towards him.  (See Compl. ¶ 15 & 16).  Because

Plaintiff has not alleged that any of Defendant's outrageous acts occurred outside of the

context of the workplace, the Court  concludes that Plaintiff's complaints about "spying and

investigations" reasonably relate to his work.  The Court further concludes that the CBA

must be consulted to examine whether Defendant is justified in utilizing this type of

investigation in such a context.  See Garley, 236 F.3d at 1214.  Therefore, this claim is preempted and subject to dismissal as it involves referring to and considering the CBA provisions.

### 3.    Racial Slurs

Plaintiff's claims relating to   racial slurs are not preempted because the interpretation of the terms of CBA is not necessary to prove that racial slurs are outrageous and without justification.  See Albertson's, Inc., 982 F.2d at 1482-83 (holding that a claim of intentional infliction of emotional distress was not preempted because the alleged fabrication of theft and conspiracy to have employee arrested did not require consultation of the CBA or a term of the CBA).  Therefore, those claims of intentional infliction of emotional distress and prima facie tort which are based upon alleged racial slurs are not preempted.

### C.    Dismissal and Remand

Having determined that all of Plaintiff's claims in this action are preempted except for those claims which are based upon alleged racial slurs, the Court concludes that it is appropriate to dismiss the preempted claims without prejudice and decline to exercise supplemental jurisdiction over the remaining state-law claims based upon the alleged racial slurs.  Dismissal without prejudice is the appropriate disposition for the preempted claims because Plaintiff's Complaint does not properly plead any claims under LMRA.  See Allis-Chalmers Corp., 471 U.S. at 220-221.  In addition, the Court notes that Plaintiff has explicitly stated that he is not asserting any alternative causes of action under Title VII of the

Civil Rights Act, 42 U.S.C. § 1981, or 42 U.S.C. § 1983, and that he is only asserting claims under purely state common-law tort theories.  (Pltf.'s Resp. to Def.'s Mot. to Dismiss at III.)

Federal courts can refuse to exercise supplemental jurisdiction over a claim if the district court has dismissed all the claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c).  Having disposed of all of Plaintiff's claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  In so concluding, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  As Plaintiff did not engage in any discovery, the Court determines that remand would not adversely affect convenience and judicial economy.  Further, notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  After analyzing these factors, the Court determines that Plaintiff should pursue his state law claims regarding racial slurs in the state court.  Based on this determination, it is unnecessary at this point for the Court to address Defendant's arguments in support of their motion for summary judgment on res judicata or claim preclusion.

III.   **CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiff's claims relating to alleged racial slurs should be remanded, and that Plaintiff's remaining claims should be dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion to Dismiss or Alternatively Motion for Partial Summary Judgment* is **DENIED** in part with respect to Plaintiff's state law claims relating to alleged racial slurs and **GRANTED** in part with respect to the dismissal without prejudice of Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Remand* is **GRANTED** as to all claims relating to the alleged racial slurs.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims, except claims based upon the alleged racial slurs, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims relating to the alleged racial slurs be and hereby are **REMANDED** to the Second Judicial District Court for the County of Bernalillo, State of New Mexico.

**SO ORDERED**, this 27th day of November, 2002, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-14-